UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JEAN ZOULEK, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>GANNETT CO., INC., a California corporation, and A MARKETING RESOURCE LLC, a Delaware registered corporation,<br><br>*Defendants*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Jean Zoulek ("Plaintiff Zoulek" or "Zoulek") brings this Class Action Complaint and Demand for Jury Trial against Defendant Gannett Co., Inc. ("Defendant Gannett" or "Gannett") and Defendant A Marketing Resource LLC. ("Defendant AMR" or "AMR") to stop the Defendants from violating the Telephone Consumer Protection Act by making telemarketing calls *without consent* to consumers who registered their phone numbers on the National Do Not Call registry ("DNC) and to consumers who were called despite asking for the calls to stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Zoulek, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff Jean Zoulek is a resident of Hubertus, Wisconsin.

2. Defendant Gannett is a Delaware registered corporation headquartered in Mclean, Virginia. Defendant Gannett conducts business throughout this District, Wisconsin, and the U.S.

3. Defendant AMR is a Minnesota registered company headquartered in Woodbury, Minnesota. Defendant AMR conducts business throughout this District, Wisconsin, and the U.S.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction over the Defendants because Plaintiff Zoulek resides in this District and the wrongful conduct giving rise to this case was directed by the Defendants to this District.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200©(2).

8. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. According to online robocall tracking service "YouMail," 4.6 billion robocalls were placed in October 2022 alone, at a rate of 147.5 million per day. www.robocallindex.com (last visited November 21, 2022).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

16. Defendant Gannett is a subscription-led media and marketing solutions company. It owns and operates a number of media brands throughout 46 states including the Milwaukee Journal Sentinel.[3]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/gannett/about/

17. AMR provides outsourced sales and marketing solutions for companies throughout the U.S.[4]

18. The solutions that AMR provides for its clients include outbound telemarketing sales and telemarketing customer retention programs.[5]

19. Based on an investigation conducted by Plaintiff's attorneys, Gannett outsourced its customer service and customer retention programs to AMR for those calls to Plaintiff and the putative class. When the phone number used to call the Plaintiff 414-209-4903 is called, the live agents indicate that they work for AMR, which they identify as "A Marketing Resource on behalf of Gannett".

20. Numerous former employees and consumers have commented on the fact that Gannett outsources its customer service for Milwaukee Journal Sentinel, such as:



**Jan G.**
Oconomowoc, WI
26  19  6

★☆☆☆☆  2/7/2022

From missed delivery to being overcharged for a renewal (double what it should have been) to having to call the Philippines for client service, this paper has become pitiful! I want to support local journalism, but you can't even get your hands on a local number to call. Seems like a lot of people are disgusted with Gannett's purchase. Why outsource customer service? Simple - greed. Cut costs at any price![6]

---

[4] https://www.linkedin.com/company/amr---a-marketing-resource/about/
[5] https://www.4amr.net/services
[6] https://www.yelp.com/biz/milwaukee-journal-sentinel-milwaukee



**Robt L.**
Fountainwood, Muskego, WI
◎ 0  ⊛ 1

★☆☆☆☆ 11/11/2020

Since the Gannett Company outsourced their subscription services (I use that term loosely), I have been billed amounts on my credit card that were never authorized and after three calls to the Phillipines I still have not received a full credit. This paper has gotten worse and worse in EVERY regard over the past several years. Customer No Service is what Clark Howard would call it. UGH!!! [7]

**P K.**
Milwaukee, WI
◎ 0  ⊛ 6

★☆☆☆☆ 5/20/2020

I was a loyal reader for many years. The paper version got to be very pricey, so we switched to the digital version. What a mistake that was!! The digital version consistently crashed every time we tried to read it. Tried calling the customer service number when they were still answering the phones in Milwaukee, but no one ever answered, even during their business hours. I gave up after months of trying to talk to them. I got a bill in the mail for $48.96 which I'm not paying because I could never read the digital version. Now, they have farmed out their customer service overseas to the Phlippines. I have spoken with five different people all assuring me that my account is deactivated and to disregard the bill, but alas I am still getting a bill. Perhaps if they had better customer service in the United States they would regain more loyal readers. A disgruntled former customer [8]

21. Upon information and belief, Gannett provides lists of consumer phone numbers to AMR, including those that have subscribed to their publications in the past, for the sake of telemarketing their subscription services to them.

22. Upon information and belief, Gannett pays AMR for each subscription renewal that AMR generates on behalf of Gannett.

23. Unfortunately, AMR, on behalf of Gannett, places telemarketing calls to consumers who are registered on the DNC and who have not provided consent to Defendants to receive calls in the first place.

24. To make matters worse, AMR employees continue to place calls to consumers who have specifically told AMR's employees to stop calling them, as per Plaintiff's experience.

---

[7] https://www.yelp.com/biz/milwaukee-journal-sentinel-milwaukee?start=10
[8] https://www.yelp.com/biz/milwaukee-journal-sentinel-milwaukee?start=20

25. Numerous consumers have posted complaints online about calls they received from AMR, including complaints from consumers who received unsolicited calls after telling AMR employees to stop calling, including:

- "Keep calling about Milwaukee Sentinental Journal. I don't even live in the area any more. I told them to quit calling but they call at least once a day sometimes twice or more!"[9]

- "Harassing phone calls answer but they say nothing. someone stop this spam."[10]

- "Keeps calling me. Never leaves a message. Now my phone just blocks them. I use to be a subscriber to Milwaukee Journal Sentinel. Not any more."[11]

- "They don't know how to take no for an answer"[12]

- "Returned that call & I received a pre-recorded female message claimed to be from marketing resources & about newspaper subscriptions. I just hung up & blocked this number"[13]

- "Recently canceled my subscription to LA Daily News due to delivery issues… I assume they are calling to request I re-subscribe but thanks to the info on this terrific website I have determined the calling party and blocked them from contacting me."[14]

- "Lady with THICK foreign accent (Indian, barely speaks English) telling me to renew my newspaper subscription. SCAM! I never had any newspaper subscription in my life"[15]

26. Based on the foregoing, AMR was authorized by Gannett to act on Gannett's behalf with respect to the telemarketing phone calls/texts to consumers described above. In addition and/or in the alternative, AMR had apparent authority to act on Gannett's behalf with respect to the telemarketing phone calls/texts to consumers described above. In addition and/or in the alternative, Gannett ratified AMR's making of the telemarketing calls/texts described above.

---

[9] https://800notes.com/Phone.aspx/1-414-209-4903
[10] Id.
[11] Id.
[12] https://lookup.robokiller.com/p/414-209-4903
[13] https://directory.youmail.com/phone/866-616-5069
[14] https://800notes.com/Phone.aspx/1-866-616-5069
[15] https://lookup.robokiller.com/p/866-616-5069

Indeed, Gannett knew that AMR places outbound telemarketing text messages to consumers nationwide on behalf of Gannett, to generate solar leads for Gannett. Accordingly, Gannett is responsible for AMR's making of the telemarketing calls.

27. The Federal Communication Commission has instructed that corporations such as Gannett may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activties to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

28. In response to these unsolicited telemarketing calls, Plaintiff Zoulek files this lawsuit seeking injunctive relief requiring the Defendants to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF ZOULEK'S ALLEGATIONS

29. Plaintiff Zoulek registered her cell phone number on the DNC on December 16, 2006.

30. Plaintiff Zoulek's cell phone number is not associated with a business and is used for personal use only.

31. Plaintiff Zoulek began a subscription to the Milwaukee Journal Sentinel in the early 1980's. This subscription was canceled by Plaintiff in June of 2022.

32. Shortly after the subscription was canceled, Plaintiff began receiving calls from AMR on behalf of Gannett from the phone number 414-209-4903.

33. Based on an investigation conducted by Plaintiff Zoulek's attorneys, when 414-209-4903 is called, the employees initially identify the company name as Journal Sentinel but they state that they work for AMR – A Marketing Resource, on behalf of Gannett.

34. Each time Plaintiff Zoulek spoke to an AMR employee, she asked for the calls to stop and for her phone number to be removed from the call list. This did not stop AMR from calling, on behalf of Gannett.

35. On August 17, 2022, Plaintiff Zoulek received a call from Defendant AMR on behalf of Defendant Gannett to her cell phone from phone number 414-209-4903. The purpose of the call was for Plaintiff to resubscribe to the Milwaukee Journal Sentinel at a discounted rate, which would include online article access. Plaintiff Zoulek told the employee that she was not interested and asked for the calls to stop.

36. Despite her clear stop request, Plaintiff Zoulek received a 2nd call from Defendant AMR on behalf of Defendant Gannett to her cell phone from phone number 414-209-4903 on August 19, 2022. Again, the purpose of the call was to get Plaintiff to re-subscribe to the Milwaukee Journal Sentinel. Plaintiff told the employee to stop calling and asked for her phone number to be removed from the calling list.

37. The above scenario repeated itself on August 22, 2022 and August 23, 2022.

38. Despite multiple stop requests, Plaintiff Zoulek received the following unsolicited calls from Defendant AMR on behalf of Defendant Gannett. Each answered call represents another stop request from Plaintiff Zoulek:

- September 13, 2022 from 414-209-4903 – Answered with a stop request;
- September 14, 2022 from 414-209-4903 – Answered with a stop request;
- September 15, 2022 from 414-209-4903 – Answered with a stop request;
- October 11, 2022 from 414-209-4903 – Answered with a stop request;
- October 12, 2022 from 414-209-4903 – Answered with a stop request;
- October 13, 2022 from 414-209-4903 – Answered with a stop request;
- October 17, 2022 from 414-209-4903 – Answered with a stop request;

- November 9, 2022 from 414-209-4903 – Answered with a stop request;
- November 10, 2022 from 414-209-4903 – Not answered;
- November 11, 2022 from 414-209-4903 – Answered with a stop request;
- November 12, 2022 from 414-209-4903 – Not answered;
- November 30, 2022 from 414-209-5234 – Answered with a stop request;
- December 1, 2022 from 414-209-5234 – Answered with a stop request; and
- December 2, 2022 at 2:34 PM from 414-209-5234 – Answered with a stop request.

39. Based on an investigation conducted by Plaintiff Zoulek's attorneys, when 414-209-5234 is called, an automated system thanks the caller for calling The Journal. The same message is heard when calling 414-209-4903.

40. The unauthorized solicitation calls that Plaintiff received from AMR on behalf of Gannett, as alleged herein, have harmed Plaintiff Zoulek in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

41. Seeking redress for these injuries, Plaintiff Zoulek, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

42. Plaintiff Zoulek brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) AMR called on behalf of Gannett more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendants called Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) AMR called on behalf of Gannett more than one time, (2) within any 12-month period (3) for substantially the same reason

Defendants called Plaintiff, (4) including at least once after the person requested that they stop calling.

43. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Zoulek anticipates the need to amend the Class definitions following appropriate discovery.

44. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

45. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendants' conduct violated the TCPA;

(b) Whether Defendants placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

46. **Adequate Representation**: Plaintiff Zoulek will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in

class actions. Plaintiff Zoulek has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff. Plaintiff Zoulek and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Zoulek nor her counsel have any interest adverse to the Classes.

47. **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Zoulek. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Zoulek and the Do Not Registry Class)**

48. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

49. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

50. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this

subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

51. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Bethea and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

52. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff Bethea and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above.

53. As a result of Defendants' conduct as alleged herein, Plaintiff Bethea and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Zoulek and the Internal Do Not Call Class)**

54. Plaintiff repeats and realleges paragraphs 1 to 47 of this Complaint and incorporates them by reference herein.

55. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the

following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

56. Defendants placed calls to Plaintiff and members of the Internal Do Not Call Class

on behalf of Defendants without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendants to initiate telemarketing calls.

57. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

58. The Defendants have, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendants' conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Zoulek individually and on behalf of the Classes, prays for the following relief:

59. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Zoulek as the representative of the Classes; and appointing her attorneys as Class Counsel;

60. An award of actual and/or statutory damages and costs;

61. An award of attorney's fees;

62. An order declaring that Defendants' actions, as set out above, violate the TCPA;

63. An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

64. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Zoulek requests a jury trial.

DATED this 7th day of December, 2022.

        **JEAN ZOULEK**, individually and on behalf of all others similarly situated,

        By: /s/ Stefan Coleman

        Stefan Coleman
        law@stefancoleman.com
        Coleman PLLC
        66 West Flagler Street, Suite 900
        Miami, FL 33130
        Telephone: (877) 333-9427
        Facsimile: (888) 498-8946

        Avi R. Kaufman (FL Bar no. 84382)
        kaufman@kaufmanpa.com
        KAUFMAN P.A.
        237 South Dixie Highway Floor 4
        Coral Gables, FL 33133
        Telephone: (305) 469-5881

        *Attorneys for Plaintiff and the putative Class*

        *\*Pro Hac Vice motion forthcoming*